**FOR THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| **David Anthony Babb,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **C/A No.:** 2:25-cv-13205-RMG-MHC |
| v. | ) | |
| | ) | |
| **AMERICAN HONDA MOTOR CO., INC.,** | ) | **JURY TRIAL DEMAND** |
| | ) | |
| **Defendant.** | ) | |
| ——————————————————— | ) | |

Plaintiff David Anthony Babb ("DAB"), individually, makes the following allegations pursuant to the investigation of the recalled inverter unit and information based upon such recall, and the below-stated allegations, which are based on personal knowledge.

## NATURE OF CAUSE OF ACTION

1.    This action is, in part, a product liability suit against the Defendant American Honda Motor Co., Inc. ("Honda" or "Defendant") for the manufacture and sale of two Honda EU2200i 30 Amp Companion Generators ("Companion") which were manufactured and sold for Honda but had a design defect that Defendant failed to disclose to DAB at the time of purchase of either generator, and after it was reported to a Honda of America representative during a telephone conversation on March 10, 2024 that one of the Companion's caught fire that day, the representative never disclosed that the generator was on recall. Model Serial Number: EAMT 1121263 is believed to be the unit that caught fire; the other generator, EAMT 1159335, remains unusable due to a dangerous flaw; however, it cannot be determined with certainty which unit caught fire, as the only way to identify the units is from the outer plastic cover, which fits either unit. Moreover, as explained below, the EU2200i and 2000i models have the same left side mold.

2.     The design defect on the inverter causes the Companion to catch fire, posing severe hazards, including possible loss of life.  This sealing defect has rendered the Companion unsuitable for its principal and intended purpose.  Based on information and belief, the Companion's defective nature spans both models because one manufacturer manufactured them, and both have identical electrical, physical, and functional characteristics, utilizing the same components for each model.  Thus, the defect manifests equally across both Honda 30 Amp Companion Generators models, described above in ¶1.

3.     On March 17, 2020, Defendant recalled the Companion in cooperation with the U.S. Consumer Product Safety Commission ("CPSC").  The product was found to have a short-circuit issue that could cause fire, especially in regions where saltwater is present. Before DAB's Companion caught fire, Honda had exclusive knowledge of the defect that was unknown to DAB.

4.     But Honda's recall is insufficient. It was designed so that Honda could retain as much of its unlawful profits as possible while providing as few benefits to purchasers as possible.

5.     Notably, Honda's March 17, 2020, recall provides minimal notice to any consumer. Honda has offered to repair the generators but has not offered any form of monetary relief for non-use of the product, inconvenience of dealing with the service centers, or, in the case at hand, the replacement of all of the burned parts, especially since the Service Center stated that they don't get paid in full from Honda for their actual labor and no payment for filling out the paperwork.

6.     DAB is facing difficulty getting a Honda service center to work on the Companion due to comments from their lead mechanics that "Honda will not pay us for our

work." It was published that Honda had a shortage of parts on a prior recall with their fuel switch in or around April 18, 2019, which was posted on their website at powerequipment.honda.com. ("We empathize with those customers waiting to have recall repairs performed by their authorized Honda Power Equipment servicing dealer due to an insufficient supply of replacement parts."). https://cdn.powerequirment.honda.com/pe/pdf/Recalls/Consumer-parts-letter.pdf. Carrying either Companion to a service center to merely sit for months constitutes non-use.

7.     Honda sold the 30 Amp Companions to DAB despite the material omission that they were unfit for their intended purpose. DAB would not have purchased the products had he known about this material fact.

8.     With hundreds of thousands of units sold at approximately $1,300 each, Honda has profited enormously from failing to promptly disclose the product defect to DAB.

9.     Although Honda sells the Companion model through its authorized dealerships, DAB is a third-party beneficiary of the contractual relationship between Honda and its dealers because Honda's authorized dealers, franchisees, representatives, and agents were not intended to be the ultimate consumers of the Companions and have no rights under the warranty agreements or contracts of sale provided with the product. Honda knows that consumers are the end-users of its products.

10.     Upon information and belief, the contracts between Honda and its authorized dealers also explicitly state that "Dealer agrees that it will expressly incorporate any warranty furnished by American Honda with a [Honda Product] as part of each order form or other contract for the sale of such [Honda product] by Dealer to any buyer." (emphasis added).

11.     Accordingly, the warranty agreements covering the Companion 30 Amp model were designed for and intended to benefit only the ultimate purchasers, such as DAB.

12.     As a direct result of Honda's actions, DAB has suffered injury, has been damaged, and has suffered a loss of money and property for having paid more than he otherwise would have for a dangerous and defectively designed Product.

13.     Plaintiff brings his claims against Defendant individually as a purchaser of the Companion 30 Amp model for breach of implied warranty, unjust enrichment, and violation of South Carolina's Unfair Trade Practice Act (SCUTPA). Also, over six years, DAB purchased approximately five generators, paying roughly $1,300 for each generator from an authorized dealer on Dorchester Rd. North Charleston, SC.  Before purchasing the recalled EU2200i Companion 30 Amp models ("Companion"), DAB was not made aware that the Companion is defective and poses a severe safety hazard, which was only in the possession of the Defendant and its representatives. Nothing on the Companion's packaging disclosed this material fact. DAB purchased the Companion because he believed it was fit for use as a portable generator. However, the two Companions were not suitable for use as portable generators due to their dangerous defect.  DAB would not have bought the Companion, or would have only done so on substantially different terms, had he known that the Companion catches fire due to saltwater exposure, rendering it both dangerous and useless.

## THE PARTIES

14.     DAB is a citizen of Charleston, SC, residing on his vessel in the federal waters of the Ashley River.

15.     Defendant American Honda Motor Co., Inc. is a California corporation with its principal place of business in Torrance, California.  Defendant Honda markets and sells its portable generators widely throughout the United States.  Based on information and belief,

4

Defendant Honda has sold hundreds of thousands of these defective generators, two of which were sold to DAB.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction as the faulty generator was used over federal waters in the Ashley River of Charleston, SC, pursuant to Title 28 U.S.C § 1332(a).  As stated above, Defendant Honda Motor Co. is located in California and does business all over the U.S. The dealership that sold the units is no longer in business or has relocated elsewhere in SC using a different name. Nevertheless, it registered the Companion generators with Honda from Charleston, SC. This federal court has proper venue pursuant to 28 U.S.C. § 1391 because Honda does business throughout the state of SC and this federal district of SC. The events that gave rise to DAB's claims took place within Charleston, SC. DAB purchased both Companion EU2200i 30 Amp model generators in Charleston, SC. Because the acts complained of occurred here, this Court has proper federal jurisdiction and venue for the above-stated reasons and because the relief sought exceeds $75k.

## FACTS

17.     DAB purchased two Companion generators from the Ducati-Honda of Charleston, a Charleston, SC dealership, in accordance with terms for the direct benefit of Honda, which was formerly located on Dorchester Rd. in North Charleston. Over a decade ago, DAB purchased five generators from the exact location; however, the dealership changed its name from Champion Honda to Ducati-Honda. The employees and/or staff moved with management to Hannahan, SC, and the dealership's name was changed again.

18.     The first two generators purchased were EU2000i models with the 30 Amp receptacle assembly; also, named as companions.  The owner/manager at that time was a

gentleman who referred himself as Harry, and he sold the two EU2000i units to DAB; one of which was handled over the phone and was delivered to DAB by an employee of Champion Honda to the Maritime Center; which is a marina owned and operated by the City of Charleston, wherein DAB kept his sailboat at the time. Harry and the service personnel staff knew that DAB used his generators on his sailboat.

19.     Due to maintenance issues, generally suspected fuel-related matters from possible FTC regulations of the mandated ethanol product and/or other possible implemented chemicals added into the fuel from the local gas service station, which, on the peninsula of Charleston, SC, along Lockwood Drive, has its tanks below sea level. Due to having to add additional chemicals to offset condensation in below sea level fuel holding tanks, it is most likely that the chemicals were the cause that contributed to the carburetor issues and non-use of the generators until Gerald, the lead mechanic at the dealership, could find time to service them. These events caused non-use, and at that time, fuel service stations on the Charleston peninsula did not sell non-ethanol fuel. The mentioning of non-use for maintenance is not a part of this action; however, it explains the reasoning behind purchasing multiple units, as Gerald's schedule was busy. If parts needed to be ordered, it could take months before retrieving the unit; however, because DAB was a regular customer of their service department, Gerald always moved DAB forward on the waiting list.

20.     Based on the averments mentioned above in paragraph No. 19 and due to Honda's improved model, the EU2200i, which offered an increase in horsepower from an alteration of the 97 cm cylinder to a 125 cm cylinder, made it less of a strain on the generators when operating microwaves and other appliances that pulled an initial heavy wattage load when the appliance initiated its starting cycle.  Also, after purchasing the two EU2000i models, DAB received a

telephone call from a representative of the Honda corporation asking for his opinion on the models; DAB explained that they were great, except improvements were absolutely needed regarding the unit's oil spout. The EU2200i models came with a much easier way of changing oil; practically no oil spills out, making it unnecessary to wipe oil off the generator's side and/or its base plate.

21.     When the first Companion model(s) suffered fuel-related issues from a leaking switch in March of 2019, which warranted a national recall from Honda, both of DAB's EU2000i models, NOT AFFECTED BY THE RECALL, were inoperable as they needed new piston rings. The maintenance cost to replace the rings was close to the purchase price of a new generator, so DAB telephoned the Honda Dealership on Dorchester Rd. in North Charleston to purchase another EU2200i generator. Previously, the management from the exact location sold DAB three Companion models: two were EU2000i 30 Amp Companion models and one was a EU2200i 30 Amp Companion model; all were 30 Amp Companion(s). When purchasing the fourth generator over the phone, DAB was unaware that Harry was no longer the owner/manager, nor did DAB have any knowledge that the dealership had changed names from Champion Honda to Ducati-Honda, nor that certain staff had been replaced. Most importantly, is that since the dealership knew that DAB resided on his sailboat and that the Companions were used on his sailboat in the Charleston Harbor, DAB did not understand that he had to state the word "Companion" when ordering another generator to assure that a 30 Amp receptacle was included on the unit. A 30 Amp plug-in receptacle is common on sailboats and RVs. This miscommunication of using merely the word "generator," under this set of facts, led to DAB purchasing a EU2200i Inverter model instead of a proper Companion model with the necessary 30 Amp receptacle.

22.    Because DAB had purchased at least one of his Companion models over the telephone, DAB telephoned in and requested another generator; the salesperson arranged for the pickup, and DAB arrived at the dealership, wherein the service staff loaded the generator into DAB's truck as DAB physically provided to the salesperson his VISA card. At no time did DAB inspect the paperwork or generator; DAB merely walked in, greeted the service team, walked into the establishment's check out area, paid by handing over his debit card, and then communicated to confirm that the generator was loaded into DAB's truck. Thereafter, DAB drove back to the marina; however, when DAB got back to his sailboat, he saw that the unit did not have a 30 Amp receptacle, which made it useless. Immediately, DAB telephoned back to the salesperson, who explained that if DAB wanted a Companion, he was to have specifically stated such; moreover, the salesperson explained that he had already filled out the warranty information and submitted that to Honda; thus, he explained that it was too late to return and exchange the unit. Last, DAB realized that the salesperson had misspelled DAB's last name from Babb to Bass. DAB had to spend an afternoon going to different hardware stores until eventually finding one that had an adapter to make the 30 Amp connection possible; however, when using the adaptor, it causes a strain on the model when operating the microwave during its initial start-up cycle. The earlier companion models seem more powerful than the inverter model sold to DAB under the mistaken name, Bass. However, the EU2200i 30 Amp does not strain under the initial start of a microwave.

23.    The general maintenance issues that DAB suffered with the use of his generators resulted from: 1) Carburetor damage from the ethanol or other chemicals; 2) Spark units and/or Coils that became faulty; 3) piston, ring, and cylinder replacements; and 4) wiring harness. The service manager, Randy, noticed that the fuel was causing many maintenance issues and

suggested that DAB purchase his fuel from a gas station with holding tanks above sea level and change from ethanol to non-ethanol. Also, Randy provided DAB with a Honda Service Manual, which allowed DAB to learn how to clean the jets on his carburetors. Taking Randy's advice, DAB changed to non-ethanol, which was not offered at 7 Lockwood Drive, and that change alone alleviated all of the fuel maintenance issues.

24.     During one maintenance service from Gerald, regarding the Honda recall for their units' fuel switch of 2019, which Gerald replaced, DAB believes that was the last time he used the service department on Dorchester Rd. to perform maintenance work on his generators. However, because Gerald was holding the EU2200i Companion unit waiting for the fuel switch to arrive, DAB purchased another EU2200i Companion model, which made it his fifth purchase. At that particular time, DAB's two EU2000 models needed rings, and its non-companion model needed a wiring harness; the service charge and part purchase for those units were expensive; thus, buying a new model was more favorable.

25.     DAB initiated the process of reading the shop manual that Randy had provided to him and started building his tool inventory by purchasing special Honda tools. As DAB grew more confident in his mechanical skills, he eventually commenced with small tasks, developed confidence, and eventually changed the pistons and rings in the older models. However, DAB's workspace on his sailboat is in a small compartment, and parts must be piled on each other. DAB discovered that the outer plastic shell never changed its mold from the EU2000i models to the EU2200i models; only the right side became altered by a strengthened indentation on the right frame strut.

26.     DAB failed to understand that the outer shell of the generator units have a plastic tape that has the serial numbers affixed and that is all that Honda uses to identify the models;

DAB cleaned the plastic parts and threw them into a pile, and when in need of reassembly of the unit these outer shells were placed back onto one of the generators; thus, in certain transfers the actual cover did not actually get placed back on the generator of which it was removed from; see Exhibit A (Placement area for plastic parts).   Some of the plastic tape with serial numbers became scratched off, making it impossible to read the entire number.

27.     Finding the time to perform the work on the generators was one matter. However, once the generators were broken down and the issue causing non-use was determined, DAB's financial matters had to be available to order the parts; some parts took longer to arrive at the dealership; see Exhibit B (Order sheet of parts).

28.     DAB believes that on March 10th of 2024, he telephoned American Honda to inform them that one of his generators caught fire.  The telephone call to the Honda agent went as follows:

a)     DAB arrived at his sailboat to take an afternoon nap and watch a cowboy movie; those types of movies generally put DAB to sleep.

b)     After starting the Companion DAB stepped inside his sailboat and lay down to watch TV.

c)     As soon as DAB got comfortable, the Companion shut off.

d)     Having just gotten comfortable and wanting to sleep, DAB remained lying down; however, a noticeable aroma alerted DAB to get up and step out of the vessel to check on the generator, which smelled of burning. DAB initially assumed that the Companion must have flooded and coughed out black smoke.

e).     At first glance, there were no signs of smoke. However, when DAB placed his hand on the top of the Companion to steady it for pulling the starter cord, he immediately pulled his hand off its plastic outer cover shield as it was too hot to allow his hand to remain on the unit.

f).     Fortunately, DAB kept a Phillips-head screw driver in close proximity to the Companion for purposes of removing the side plate to check the oil level.  Immediately after opening the side plate, black smoke billowed out of the Companion, preventing DAB from breathing in proximity to the Companion.

g).     By way of a miracle, DAB just happened to have a five-gallon bucket on his vessel that day. He lowered it into the U.S. navigable waters of the Ashley River and scooped up about three gallons of water, which was immediately used to douse the Companion to extinguish the visible flames. DAB performed this act twice and flipped the on-off switch of the Companion to the off position.

h).     As soon as DAB caught his breath and felt comfortable about the situation, he telephoned American Honda and spoke directly with an agent, to DAB's surprise, as it was on a Sunday afternoon.  The above-stated paragraphs (a) through (g) were communicated to the agent; however, DAB failed to realize the importance of the serial number of each unit and merely blurted out the number that was presently visible. The plastic side cover used during the incident was the non-companion inverter, which provided a serial number erroneously registered as David Bass, EAMT 2062928, as mentioned above in ¶ no. 22.

i).     During the telephone conversations with the Honda representative on March 10, 2024, and again approximately ten days later, at no time did either agent mention that the Companion units were under a recall; DAB is of the understanding that Honda issued a recall on or around March 17, 2020, for the short circuit issue when used around salt water. The only

communication from the Honda of America agent was that the serial number provided, EAMT 2062928, was out of warranty.

j).    As mentioned above at ¶i) approximately ten days later DAB returned a telephone call to American Honda and apprised the agent that he believed that he provided the wrong serial number and that he explained that he had purchased a total of five generators and that three were EU2200i models and that four of the five were Companion models; two of those four were EU2200i models with serial numbers EAMT 1121263 and EAMT 1159335. Again no communication was provided to DAB that the units were faulty and that a recall had been issued on specific models as early as March 17, 2020.

29.    Months had passed after the incident **of** the fire and DAB decided to rebuild the burned unit as many parts had become destroyed during the fire; including: 1) The main wiring harness; 2) Of course the inverter unit itself where the fire initiated; 3) The starter assembly and its cord caught fire; 4) The bottom panel; 5) The left shoulder frame strut and the left side outer plastic cover melted to where the lower bolts could not be removed. While these parts were easily found online, DAB could not find a part number for the inverter unit, so he telephoned American Honda to confirm the actual part number. DAB believes that this conversation took place on September 8, 2025; during this conversation the representative informed DAB of the recall. DAB first learned of the Honda Companion Inverter Unit recall well over a year and a half after his incident, during which not one Honda agent ever reached out and explained that DAB was in possession of two Companions that were deemed faulty and were indeed on recall. The Honda of America agent stated in the conversation that he saw on his computer screen where DAB called in the fire of his generator.

**(COUNT ONE)**

**FAILURE TO NOTICE DAB OF THE RECALL IN VIOLATION OF**

**(15 u.s.c. 2064(c)(1)(F) and Title 16 § 1115.27)**

30.     Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

31.     Plaintiff brings this claim individually against Defendant.

32.     During the purchase of each generator, DAB was informed by the salesperson and/or manager of the Honda dealership that they would forward the registration information to Honda.

33.     The Honda dealership had DAB's contact information as he was a regular customer in the service, sales, and parts departments. Over the years, DAB had spent well over 10k with the dealership on Dorchester Rd. in North Charleston. The dealership had both DAB's cellphone and email contacts; moreover, DAB informed the service department staff and sales agent that he resided on his sailboat. EAAJ - 2236367 or EACT - 1610066 was purchased over the phone and the dealership delivered it to the Charleston City Marina to DAB's sailboat; these were both EU2000i models with good sealant as they were never recalled. These units are both over ten years old and need service, however, the inverter unit was still operable last time used in 2024.

34.     DAB never received any notice from any Honda representative that his companions were on recall. Following the initial call on March 10, 2024, DAB called approximately ten days later to clarify the misidentified serial number; again, no notice was provided that the other non-burned Companion was under a recall.

35.     The Honda of America representative during the March 10, 2024, telephone conversation regarding the Companion catching fire should have been able to determine that

DAB owned multiple units and that two were under recall; however, she failed to provide any notice to DAB. No representative from Honda ever reached out to DAB regarding his burned unit, nor to explain that his units were under a recall.

36.    The acts and omissions from the Honda representative constitute a wilful disregard to provide notice as is required by law. Honda telephoned DAB once to request of his opinion over the two EU2000i model Companions in which he purchased; thus, both Honda and the former dealership had DAB's contact.

### (COUNT TWO)
### (RECALL PROCEDURE FOR REPAIRS DOES NOT CURE DEFECT)

37.    Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

38.    Plaintiff brings this claim individually against Defendant.

39.    DAB telephoned American Honda on September 18, 2025, to determine the necessary steps to obtain the recalled inverter unit part.  During the conversation, it was explained to DAB that the unit would have to be delivered to an authorized service agent in good standing with Honda.  One location that was informed to DAB was Northern Tool in North Charleston.

40.    DAB telephoned Northern Tool on September 18, 2025, and spoke to the service manager ("Brice"), who stated that he did not want to deal with it because Honda does not pay and/or is slow to pay, but never pays him the full amount that he submits for the necessary work. He further stated that he has to fill out numerous pages of paperwork for which he is not reimbursed.  Despite this confrontation concerning the lack of payment of approximately 11k

between himself and Honda, he asked DAB to bring in the unit, and he would see if he could get the parts.

41.    DAB believes he delivered his Companion to Northern Tool on September 19, 2025.  Telephone records support that additional conversations took place on September 26, and on October 3rd and 7th of 2025; however, Brice initiated communication via email, suggesting that Honda does not abide by their warranty recall and that DAB was to get his unit; see attached as Exhibit C (Email conversation with Brice).

42.    DAB's telephone records support that he telephoned American Honda on October 1st and 6th, 2025, wherein on the 6th, DAB believes that he asked Honda to deem the call a complaint, as Brice, was holding the burned Companion as hostage or some form of leverage for Honda to pay his unpaid 11k.  On October 15th, 2025, Brice suggested that DAB retrieve the generator as he further explained that he would not work on it nor deal with Honda; see Exhibit C.

43.    DAB telephoned another authorized Honda service agent and carried the generator on October 20th, 2025, to the lead mechanic ("Howard") at Ji Small Engine Repairs ("Ji") on Johns Island, SC.  Howard spoke to his representative, and DAB telephoned American Honda from his cellphone at the same time as Howard was put on hold and had Howard speak directly with that representative on how to acquire the recalled part; also, Howard apprised both his and the American Honda agent that DAB's Companion actually caught fire and asked both agents how to obtain the parts that burned.  Neither agent could answer that question and merely stated that they do not know; neither agent commented that they would make any effort to try to find out any available procedure to cure the dilemma.

44.    The burned parts total over $700: a) Left outer side cover panel; b) Left frame strut; c) Starter assembly and its cord; d) Bottom plate; e) Wiring harness; see Exhibit D (Photo images of some of the burned parts).  The cost of these parts and required maintenance exceeds that of a new Companion model.

45.    On the 21st of October, 2025, the owner and/or representative of the owner of Ji Small Engine Repairs, LLC stated that DAB needed to come and retrieve his Companion as it could not remain on his property at 3444 Maybank Hwy.  DAB, who does not own a vehicle and relies on his bicycle to get around on the peninsula, had to inconvenience someone by driving him out to John's Island on October 23, 2025, to retrieve the Companion unit; incidentally, it was delivered just several days prior on October 20, 2025.  That delivery consisted of traveling to North Charleston to Northern Tool to retrieve the Companion and then drive out to the end of Maybank Hwy. Howard also stated that Honda does not pay them the full amount of their submitted invoices, nor anything for the time to do the paperwork, which they stated involves considerable red tape.

46.    DAB had to take three days off work just to deal with finding a driver and then driving the burned Companion around to various Honda service centers.  DAB spent numerous hours on the telephone with agents at the service centers and American Honda.

47.    The consensus is that the service centers that represent Honda do not speak kindly of Honda; moreover, the dealership that sold the generator units to DAB moved to Hannahan, SC, and purposely discontinued selling Honda generators due to the complexity of dealing with Honda's corporate center. While the owner of Ji stated that Howard will retrieve the parts, DAB has not been able to confirm this with Howard.  When DAB telephones Ji, they merely pick up

the phone and then immediately hang up without answering; thus, DAB is uncertain whether to carry his burned Companion to another service dealer or wait to hear from Howard.

### (COUNT THREE)
### (VIOLATION OF CONSUMER PRODUCT SAFETY ACT)
### FEAR AND EMOTIONAL DISTRESS FROM BEING FORCED TO USE PRODUCT
### THAT IS ON RECALL DUE TO HONDA'S SERVICE DEPT. REFUSAL TO WORK
### AND LOSS OF ENJOYMENT OF LIFE AND/OR CONSORTIUM

48.     Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

49.     Plaintiff brings this claim individually against Defendant.

50.     DAB is forced to use the other Companion, knowing its inverter unit is faulty and under recall; and non-use from the destroyed product. The usability of the Companion under the circumstances removes enjoyment and limits consortium of use.

51.     For safety reasons, DAB only puts enough fuel in the Companion for it to run not more than one hour in case a fire should ensue. During the running time, DAB constantly checks to confirm that a fire has not started.  DAB commented to American Honda during at least one conversation that a stainless steel plate should be installed to divide the electrical area from the plastic gas tank; also, the wiring harness should be insulated in a metal tube, as it was the wires that caught fire in proximity to the fuel tank.

52.     Had DAB fallen asleep on March 10, 2024, the Companion would have continued to burn, and it is more likely than not that the plastic fuel tank, directly above the burning harness wires, would have caught fire and exploded. That would have caused substantial damage to the sailboat. However, if DAB had not awakened under such explosive circumstances, then death is surely possible under those conditions. DAB has at times placed his headphones on and fallen

asleep with music at a level to prevent hearing any explosion. The Companion was found defective and the defect caused the injury.

## COUNT FOUR
### (Breach of Implied Warranty of Merchantability)

53. Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

54. Plaintiff brings this claim individually against Defendant.

55. Honda, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the Companions were fit for their intended purpose in that they would function properly.

56. Honda breached the warranty implied in the contract for the sale of the Companions in that they could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose in that they did not function properly due to their defective design and dangerous propensity to short circuit around saltwater. As a result, DAB did not receive the goods as impliedly warranted by Honda to be merchantable.

57. In reliance upon Honda's skill and judgment and the implied warranties of fitness for the purpose, DAB purchased the Companion EU2200i 30 Amp model for use as a generator.

58. DAB did not alter the companions. They were defective when they left Honda's exclusive control.

59. Honda knew the Companions would be purchased and used without additional testing by DAB.

60. As a direct and proximate cause of Defendant's breach of the implied warranty, DAB has been injured and harmed because: (a) he would not have purchased the Companions on the same terms if the true facts concerning their defective nature and propensity to short circuit had been known; and (b) the Companion did not perform as promised.

### (COUNT FIVE)
### (Unjust Enrichment)

61. Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

62. DAB brings this claim individually against Honda.

63. Honda has been unjustly enriched in retaining the revenues derived from DAB of the purchases of the Companions. Retaining those monies under these circumstances is unjust and inequitable because Honda failed to disclose that the Companions were unfit for use as generators. Honda's misrepresentations and/or material omissions caused injuries to DAB because he would not have purchased the Companions if the true facts were known.

64. The retention of those monies is also unjust and inequitable because, as alleged above, Honda commenced an ineffective recall that was calculated to result in few returns and no refunds, thereby protecting the profits that Honda had collected from selling the defective products.

65. Honda not only failed to reach out to notify DAB of the recall, but it is also apparent that Honda does not pay its service mechanics. According to Honda's regulations, DAB may not even be able to find a service center that will deal with its corporate leaders due to the failure to pay them; thus, DAB remains without a useful product.

66.     Because Honda's retention of the non-gratuitous benefits conferred by DAB is unjust and inequitable, Honda must pay restitution to DAB for its unjust enrichment, as ordered by the Court.

**(COUNT SIX)**
**(Violation of South Carolina Title 39: Trade and Commerce: The South Carolina Unfair Trade Practices Act (SCUTPA), which is the state's primary law against deceptive and unfair business practices)**

67.     Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

68.     DAB brings this claim individually against Honda.

69.     By the acts and conduct alleged herein, Honda committed unfair or deceptive acts and practices by making false representations and/or material omissions concerning the Companions' fitness for their intended use as portable generators.

70.     The foregoing deceptive acts and practices were directed at consumers.

71.     The foregoing deceptive acts and practices are misleading materially because they fundamentally misrepresent and/or omit the material characteristics of the Companion to induce one to purchase them.

72.     DAB was injured as a direct and proximate result of Honda's violation because (a) he would not have purchased the Companions in the same terms if the true facts concerning their defective nature and dangerous propensity to short circuit had been known; and (b) the Companions did not perform as promised.  As a result, DAB has been damaged either in the full amount of the purchase price of the Companions or in the difference in value between the Companion as warranted and the Companions as actually sold.

73.    DAB seeks to recover his actual damages of approximately 3k from the two Companions, including the cost of riding around to service centers and the loss of wages from not being able to work, and the time of non-use of the product.

74.    Based on the foregoing, Honda has engaged in consumer-oriented conduct that is deceptive or misleading in a material way, which constitutes false advertising in violation of the SC SCUPTA by failing to disclose that the Companions defective nature causes it to short-circuit around saltwater and is thus unfit to be used as a generator.

75.    The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

76.    This omission has injured and harmed DAB's interest.

77.    DAB was injured as a direct and proximate result of Honda's violation because (a) he would not have purchased the Companions on the same terms if the true facts concerning their defective nature and dangerous propensity to short circuit had been known; and (b) the Companions did not perform as promised.  As a result, DAB has been damaged either in the full amount of the purchase price of the Companions or in the difference in value between the Companions as warranted and the Companions as actually sold.

### (COUNT EIGHT)
### (NEGLIGENCE OR STRICT LIABILITY)

78.    Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

79.    DAB brings this claim individually against Honda.

80.    That Honda used insufficient glue and/or the required sealant, which had been used thoroughly on other prior model generators that did not require being recalled.

81.    DAB seeks to enjoin the unlawful acts and practices described herein, to recover actual, compensatory, and punitive damages for $75k on each count, and as the jurors deem appropriate, especially since Honda willfully decided to reduce the sealant or choose a lesser grade of material for these particular Companions safety purposes; see Exhibit E (Recall Documents from Honda).

## LEAVE TO AMEND

82.    DAB reserves his right to amend this Complaint to add different or additional defendants, including, without limitation, any officer, director, employee, supplier, or distributor of Honda Portable Generators who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein to include if Honda made willful decisions to alter its sealant or reduce its amount in the production of the Companion.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff individually seeks judgment against Defendant as follows:

a.    For an Order declaring the Defendant's conduct violates the statutes referenced herein;

b.    For an Order finding in favor of Plaintiff;

c.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

d.    For prejudgment interest on all amounts awarded;

e.    For an order of restitution and all other forms of equitable monetary relief;

f.    For an order awarding Plaintiff expenses and costs of the suit.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable in this action.


Dated:  October _30th_, 2025.


David Anthony Babb
P.O. Box 522
Charleston, SC  29402

DAB